**ZIA SHAIKH**
**4400 Route 9, Suite 1000**
**Freehold, NJ 07728**
**732-766-5466**
*Plaintiff, Pro Se*



R E C E I V E D

AUG 2 1 2020

AT 8:30 _____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## (TRENTON)

| | |
|---|---|
| **ZIA SHAIKH,** ) | CIVIL ACTION: |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **CITTA HOLZAPFEL AND** ) | **DEMAND FOR JURY TRIAL** |
| **ZABARSKY P.C., STEVEN A.** ) | |
| **ZABARSKY ESQ, LAURA** ) | |
| **GERMADNIG, SLAVA, NANCY** ) | |
| **KLEYMINE CAVANAUGH, JOHN** ) | |
| **REED,   JOHN PEJOSKI,** ) | |
| **SIEGFRIED GERMADNIG,** ) | |
| **PATRICIA GERMADNIG,** ) | |
| **COWAN GUNTESKI & CO,** ) | |
| **JOSEPH GUNTESKI CPA and** | |
| **WILLIAM STABILE CPA,** John | |
| Does 1-10, Jane Does 1-10, XYZ as | |
| **Individuals** | |
| | |
| Defendants. | |

COMES NOW, Plaintiff Zia Shaikh, Pro-Se, and complains against the above referenced Defendants as follows:

1

## I.    PARTIES

1. Pro Se Plaintiff Zia Shaikh (Shaikh) is a citizen of the United States and a domiciliary of the State of New Jersey, with a mailing address of 4400 Route 9, Suite 1000, Freehold, New Jersey 07728.

2. Defendant John Reed (Reed), an individual, is a resident of New Jersey, with a mailing address of 47 Cornell Drive Manahawkin, NJ 08050.

3. Defendant Citta, Holzapfel, and Zabarsky P.C. (CHZ) is a law firm with an office address of 248 Washington Street Toms River, New Jersey 08753; and at all times relevant hereto, acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

4. Defendant Steven A. Zabarsky, Esquire (Zabarsky) is an attorney licensed to practice law in the state of New Jersey with an office address of 248 Washington Street Toms River, New Jersey 08753. Defendant Zabarsky was the attorney for Plaintiff's ex-wife Laura Germadnig (Shaikh). Defendant Zabarsky is an employee of CHZ, and at all times relevant hereto, acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

5. Defendant, Laura Germadnig (Laura), an individual, resides at 5 Lons Lane, Jackson, County of Ocean, State of New Jersey, 08527. Laura is the ex-wife of Plaintiff and the mother of his children, Milana Shaikh, 20 years of age,

born March 26, 2000, Sonya Shaikh, 16 years of age, born December 29, 2003, and Harrison Shaikh, 13 years of age, born November 7, 2007. At all times relevant hereto, acting alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

6. Defendant John Reed (Reed), an individual, resides at 47 Cornell Drive Manahawkin, NJ 08050. Reed was hired to install an illegal tracker on plaintiff's private automobile without plaintiff's consent or knowledge, and at all times relevant hereto, Reed acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

7. Defendant John Pejoski (Pejoski), an individual, resides at 410 Bartley Rd, Jackson, NJ, 08527-1163, and at all times relevant to this Complaint Defendant Pejoski acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

8.     Defendant Siegfried Germadnig, (Siegfried), an individual, and father of Defendant Laura Germadnig, resides at 172 Roosevelt Avenue, Howell, County of Monmouth, State of New Jersey 07731 at all times relevant to this Complaint, and at all times relevant hereto, acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

9.    Defendant Patricia Germadnig (Patricia), an individual, is the mother of Defendant Laura Germadnig, and resides at 172 Roosevelt Avenue, Howell, County of Monmouth, State of New Jersey 07731. At all times relevant to this Complaint Patricia acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

10. Defendant Cowan, Gunteski & Co (Cowan) is an accounting firm, upon information and belief, a professional partnership, licensed to do business in New Jersey, with an office at 40 Bey Lea Road, Suite A101 Toms River, NJ 08753. At all times relevant hereto, Cowan acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

11.  Defendant Joseph Gunteski (Gunteski), an individual, resides in New Jersey, and is an employee of Defendant Cowan and at all times relevant hereto, acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

12.  Defendant William Stabile (Stabile), an individual, resides in the state of New Jersey. Defendant Stabile is an employee of Defendant Cowan, and at all times relevant hereto, acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

13.  Defendant Slava Kleyman (Slava), an individual, resides at 20 Tower, Long Branch, NJ 07740, Monmouth County, and at all times relevant to this

Complaint acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

14. Defendant Nancy Kleyman Cavanaugh (Nancy), an individual, resides at 1187 Marisa Dr Toms River NJ 08724 Ocean County, and at all times relevant to this Complaint acted alone or in concert with others, formulated, directed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set forth in this Complaint.

## II.   JURISDICTION AND VENUE

15. The District Court has jurisdiction of this Case under 28 U.S.C. §§ 1331, and pendent jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as Plaintiff's federal and state legal claims derive from a common nucleus of operative fact. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202, and 1343.

16. Venue is proper in this Division under 28 U.S.C. § 1391 because several of the Defendants are located in this Division of the District, and many of the acts and omissions that gave rise to Plaintiff's claims occurred in this Division.

## IV, FACTUAL ALLEGATIONS AGAINST DEFENDANTS
## ZABARSKY AND C.H.Z

17. On or before September, 2013, Plaintiff and his then wife Laura were in the process of divorcing in the Ocean County vicinage.

18. The final Judgment of Divorce issued on December 20, 2016. The case was assigned to Judge Marelene L. Ford, A.J.S.C., in June of 2015.

19. Defendant Zabarsky was counsel for Plaintiff's ex-wife Laura in divorce case docket No. FM-15-500-14W, in the Superior Court of Ocean County, New Jersey.

20. On April 23, 2014, Defendants Zabarsky and C.H.Z blatantly told obvious lies allegedly about Plaintiff's conduct of domestic abuse, when being fully aware that on Jan 30, 2014, after a full trial on all charges of domestic violence, all charges against Plaintiff were dismissed.

21. On April 23, 2014. Zabarsky presented Plaintiff's five year old statement from Morgan Stanley advisors, Line of Credit (LOC) statements, to justify his claims that Plaintiff's income was $80,000 to $90,000 monthly, with the intent of defrauding the court into granting him a $50,000 retainer. *[see full investigative report of Ethics complaint investigator Maria Detitto of April 06,2019 and alleged doc presented at April 23,2014 hearing for proof attached hereto and incorporated herein by reference]* **EXHIBIT "1"**

22. On April 23, 2014, Zabarsky testified without any confirming testimony from his client the defendant LAURA, stating that Plaintiff called his daughter Milana then age 14 a derogatory term, "Nigger" as a form of abuse towards her and additionally falsely testified that plaintiff was going to run off to Dubai with his children and thus caused a HOLD & NON-RENEWAL to be placed on Plaintiff's passport with the State Department, violating his federally protected rights under the 14th amendment. Zabarsky never submitted evidence or proof I support of his allegation.

23. Zabarsky repeatedly falsely testified at parenting time or custody reversal hearings that Plaintiff had not completed the Anger Management Course to have parenting time with his children despite receiving certification from Ocean Health Services via Plaintiff's counsel August Landi, Esq, that on May 2, 2015 he successfully completed the court ordered course and paid $215 for same. At this point in May 2015 Plaintiff had not seen his kids for one full year.

24. Zabarsky repeatedly ignored all correspondence from Plaintiff's respective two divorce attorneys on all offers for an amicable resolution and settlement of the divorce matter, forcing plaintiff's counsel to file motions, thus exponentially increasing litigation and related costs. Plaintiff's first Attorney Stephanie Brown and August Landi's respective letters demonstrate a pattern of abuse of process by Zabarsky. **"EXHIBIT 2"**

25. To get parenting time and overnight visits Plaintiff was forced to obtain an apartment, but once Plaintiff got the apartment Zabarsky refused to negotiate

a parenting schedule; despite dozens of motions seeking a schedule. **"EXHIBIT 3"**

26.    Plaintiff's three divorce attorneys, his CPA and plaintiff himself provided all required tax returns, bank statements and other financial documents demanded in Discovery, in addition to Defendant Laura's theft of all Plaintiff's client files, business documents, business computer given to forensic accountants Gunteski and bank statements which she gave directly to her attorney Zabarsky, and further more over 150 subpoenas were sent to various financial institutions around the globe; but yet Zabarsky repeatedly claimed that "Plaintiff" did not provide discovery. It is interesting to note that allegations of "failure to provide discovery" were never made to the court when Plaintiff was sporadically represented by attorneys at different times. The court allowed countless subpoenas to be sent to financial institutions to appease Zabarsky, yet no more funds were discovered than truthfully disclosed by Plaintiff in his CIS at the onset of the divorce. (See Defendant's Motion for Subpoenas , **EXHIBIT 4**)

27. The Zabarsky law firm  defendants refused to negotiate divorce settlement offers with Plaintiff's divorce attorneys despite several requests and a Court Order by Judge Lawrence Jones for an ISP (Intensive Settlement Panel) on June 01, 2015. Zabarsky, on this day, instead of negotiating a settlement, held a private meeting with the 2 panel lawyers and then dismissed the hearing in 15 minutes, while greatly prejudicing and financially harming Plaintiff, harm that affects him to this day.

28. Zabarsky submitted stolen business documents and client files to the court provided to him by Laura, despite Plaintiff's notice to the parties that the material was stolen, providing more than sufficient discovery.

29. Zabarsky refused to recuse himself from the divorce case -- when Plaintiff filed a Federal law suit case # 3:15-cv-04106 captioned ZIA H. SHAIKH v. JACKSON TWP et al and a NJ Superior court State tort case # L-2818-15 against him in violation of Rules of Professional Conduct and NJ Rules of Court.

Steven Zabarsky hired:

   a) Seth Arkush MCSW – therapist to provide a false report on Plaintiff's character and conducted various HIPAA violations for which the NJ attorney general publicly reprimanded him on February 08,2018. (Exhibit 5)

   b) Cowan Gunteski & Company – a forensic CPA firm that counted Plaintiff's family savings and produced a report without any evidence to back up their claims, ignoring a step by step rebuttal provided by Plaintiff's CPA Thomas J. Whale on Plaintiff's assets and movement of same funds from one account to the next for investment purposes. Gunteski CPA ignored all proofs to justify the lies told at the Ex Parte April 23, 2014 hearing by Zabarsky which have now been exposed via the ethics committee investigation by Ms.Maria Detitto. (See **EXHIBIT "1"**)

   c) Brad Bilheimer Esq – currently head of Ocean county Prosecutors office to represent Laura Germadnig and successfully shut down all Plaintiff's efforts to identify false police reports filed by Laura

Germadnig on Jan 18, 2014, that lead to Plaintiff's initial arrest and a TRO.

d) John Reed – Private investigator hired to place an illegal tracker on Plaintiff's car – a FEDERAL offense. **EXHIBIT 6**

e) John Pejoski, a Jackson public school resource officer and an officer with Jackson Police department, was told to humiliate and smear Plaintiff's good name at his three children's individual schools to all their teachers so they will not allow any contact with Plaintiff, presuming him to be an abusive father. Witnesses to these actions are the various school teachers with whom Plaintiff had recorded conversations about the actions by Pejoski.

f) Influenced Jackson Municipal court and Jackson Police to prevent taking any police reports from Plaintiff when he attempted to file complaints against Laura Germadnig and Melissa Reeves for filing false reports against him; because Steven A. Zabarsky is the local Prosecutor for Jackson twp. See (Exhibit 7 **(No probable cause finding by visiting judge)**

30. During the divorce proceedings, between the approximate period, March 2014 and December 20, 2016, Defendants Zabarsky and C.H.Z. law firm knowingly and intentionally tendered several surreptitious documents and made several claims about Plaintiff's ethnicity to the Trial Court Judge that contained false statements and led the court to issue orders that continue to harm Plaintiff in multiple aspects of his life until this moment and are likely to continue indefinitely.

31. Defendants Zabarsky and C.H.Z. law firm in their counterclaim response on February 14, 2014 to the original divorce complaint alleged "Particularly, the Plaintiff has physically and emotionally abused his ex wife and their children on multiple occasions", just a few days earlier on January 30, 2014 at a trial conducted by Ocean County Superior Court Judge Melanie Appleby, J.S.C.; it was clearly proven that Plaintiff has never had a history of any abuse of any kind towards his children or his ex-spouse. **EXHIBIT 7**

32. Defendants Zabarsky and C.H.Z. despite knowing factually that any allegations made by her client Laura L. Germadnig have been bold face lies promoted such non-meritorious assertions in their counterclaim and in court proceedings with the intent of defrauding not only the Plaintiff but also the presiding judges of the trial courts; committing felony fraud.

33. Defendants Zabarsky and C.H.Z. law firm intentionally and knowingly incited the trial court judges with repeated baseless statements and lack of responsiveness to Plaintiff's three divorce attorneys that produced court orders, defrauding plaintiff of monies, cause interference with his parent child relationship with his three minor children and caused tortuous interference with his business activities by causing his removal from the marital home that was his main operational base, due to false allegations of abuse, causing Plaintiff great emotional stress and adversely affecting his ability to earn a living. At least seven Ocean county judges are relatives and/or business partners of Steven A. Zabarsky that yields him great influence to circumvent the law.

11

34. During the entire representation period, Defendants Zabarsky and C.H.Z. coached Defendant Laura Germadnig to defraud Plaintiff by picking fights, filing false police reports and physically beating up Plaintiff so he may be encouraged to retaliate in kind, which the Plaintiff refused to do. Several Jackson and Lakewood Police reports exist attesting to the malfeasance of these defendants. **EXHIBIT 8**

35. As part of the record, knowingly and intentionally submitted documents in her answer- counterclaim to the divorce complaint for the benefit of his client Laura L. Germadnig produced false certifications that had no basis in reality. This was done in an effort to defraud Plaintiff from his income, disrupt his parent-child relationship causing Plaintiff great financial and emotional distress and adversely affecting Plaintiff's ability to earn a living. This is a direct violation of FRCP Rule 11. See **EXHIBIT "9"**

36. Shaikh is a first generation Pakistani who has lived in the United States for 30 years and has built a life here, whereby he had a family, business, and residence in the United States.

37. Defendants Zabarsky and C.H.Z. continually used racial discrimination against Plaintiff by falsely alleging he is going to take the children and abscond with them to the Mideast or Pakistan; the Defendant never testified to this allegation and no proof of any kind was ever submitted, yet Plaintiff continually suffers the consequences. The April 23, 2014 hearing transcript is riddled with such malice and racial discrimination.

38. Defendants Zabarsky and C.H.Z. have used the courts to prevent the Plaintiff from getting his U.S. passport reissued after having it blocked earlier in the divorce process; violating his constitutionally protected right to travel and to possess a passport.

39. All this adversarial effort has no relevance to anything other than the fact that they are racially discriminating against him because he is a first generation Pakistani who has lived in America, has business holdings and family in America ,for the past 30 years.

40. By the conduct described above, Defendants Zabarsky and C.H.Z. have the mental capacity of intentionally depriving Muslim men like Plaintiff of the same rights as are enjoyed by white citizens and other citizens to the rights, benefits and privileges, protected under the Constitution and the laws of the United States and New Jersey.

41. Defendants Zabarsky and C.H.Z.' discriminatory actions caused Plaintiff to suffer anguish, humiliation, distress, inconvenience and loss of enjoyment of property and liberty entitling Plaintiff to compensatory damages.

42. In their discriminatory actions as alleged above, Defendants Zabarsky and C.H.Z. acted with malice or reckless indifference to the rights of the Plaintiff thereby entitling Plaintiff to an award of punitive and compensatory damages.

43. Defendants Zabarsky and C.H.Z. have continued the racial discriminatory animus against Plaintiff by continuing to maliciously and falsely make reference to the domestic violence matter in order to curry favor with the

Family Court judiciary and deprive Plaintiff of his money and assets, as well as deprive him of his life and liberty by taking his children from him while threatening and finally having Plaintiff incarcerated three times on a non-indictable civil matter.

44. The surreptitious documents tendered to the Circuit Court Judge Madeline F. Einbinder of Ocean County by Defendants Zabarsky and C.H.Z. at the Ex-parte April 23, 2014 hearing to seek the $50,000 retainer and eviction of Plaintiff from his home while removal of all custody of his children constitutes fraud and abuse of process. See evidence obtained on April 16,2019 during the investigation by the ethics committee. This is felony fraud and violates FRCP Rule 11. (See **EXHIBIT "1"**)

45. The intentional and knowing fraud and misconduct by Defendants Zabarsky and C.H.Z. caused Plaintiff's multiple businesses to fail, in that his home office was restricted to him containing all his client files etc, the monies defrauded from Plaintiff left him unable to pay for marketing for new clients, servicing existing clients or to even have the space in the basement of his former marital home at 5 Lons Lane Jackson, NJ 08527 to operate his business from; damage to his reputation on advice by Zabarsky defendants to his clients directly or indirectly by Defendant Laura Germadnig that Plaintiff may run off with their investment funds so several clients removed Plaintiff as their advisor thus immediately stopping all income from these clients.

46. This has caused PTSD and depression leading to great emotional distress caused by Defendants Zabarsky and C.H.Z.' fraud and misconduct against Plaintiff, so incapacitated Plaintiff that he was left unfit and incapable of

performing the duties and responsibilities necessary to Plaintiff's business ventures. Pla has been under the direct care of Dr. David Lipton D. Psy. to manage his PTSD. See **EXHIBIT "10"**

47. On or about April 23, 2014, Defendant Zabarsky knowingly and intentionally made false statements to the trial court with the intent to defraud Plaintiff of monies and to deny Plaintiff's right to be heard by the trial court.

48. On or about April 23, 2014 a first scheduled Case Management Conference was held by the Court, Plaintiff was not present; nor was his then attorney Stephanie Brown of Sewell, New Jersey. Plaintiff was unaware of the scheduled Case Management Conference and by letter Stephanie Brown accepted full responsibility for her failure to appear and Plaintiff's non-attendance; per her letter to the Court of April 23, 2014. See **EXHIBIT "11"**

49. Unfortunately in Plaintiff's absence and in the absence of Plaintiff's attorney, the presiding judge in 2014, <u>Judge Madeline F. Einbinder who is a well known family friend of Zabarsky, colluded with these Defendants   granting his request for Plaintiff's removal from the marital home that was dated on an Ex Parte basis</u>. What happened on April 23, 2014 was a blatant and disastrous "miscarriage of justice."

50. Without any Notice or Opportunity to be heard, and without any emergent filings, and without any testimony on the merits from Plaintiff's ex wife Laura Germadnig who was seated at counsel table next to her attorney, Defendant Zabarsky who is an officer of the Court was allowed by the Court to make

representations to the Court that continue to be severely prejudicial to Plaintiff down to the present date.

51. Three police cars were at the family home and Plaintiff was removed at 5:00 PM on April 23, 2014, without a hearing and without sworn testimony from Plaintiff's ex-wife.  Plaintiff was removed from the home solely upon the unsworn colloquy with the Court by Defendant Steven

52. The testimony reflects that Plaintiff's ethnicity and his religious beliefs as a Muslim were used against Plaintiff to influence the Court, who happened to be the family friend of opposing counsel.   The transcript of April 23rd makes this clear.  Plaintiff has attached the Transcript herein.

**April 23, 2014 Transcript highlights:**

"  [Mr. SHAIKH] was born and raised in Pakistan and **can be considered a Pakistan national.**"

"   [T]here may be nothing stopping Mr. Shaikh from going to the Embassy, the Pakistani Embassy . . . and getting Pakistan passports. "

"[Mr. SHAIKH] decided he was going to let himself back into the house, and it has been extremely stressful and harassing for my client ..... and that was during a time when he was not residing in the residence." (pure fabrication by defense counsel)

"HE voluntarily stood out for those three months and it wasn't until this motion was filed that he's now moved himself back into the marital residence which is causing extreme emotion distress to my client and to the children ..."

"[Mr.SHAIKH] has made it clear that he doesn't believe that my client is entitled to quote, "anything from this divorce" " *(Hundreds of communications with defendant long before filing of complaint and till present day will validate Plaintiff has desired to give half of all assets without contest)*

"We spoke to the National State Department with regard to children, with regard to the passports and they said that what you would want is to get a court order that just says the children are not allowed to travel outside of the United States with their names and birth dates. We can supply that to the court." *(No proof was ever submitted to the court and despite Plaintiff's several requests no such documentation has ever been provided)*

"Laura, remember my words. When this is over we will be penniless and homeless as we know it. Lawyers will be rich and I most likely will lose all my licenses. The hardship cycle will repeat again. Don't have the kids suffer" *(Defense counsel inflames the court by twisting Plaintiff's plea into a non-existent deliberate financial destitution threat from Plaintiff)*

"[Mr.SHAIKH] has access and hacked her online email account with TD Ameritrade through a password ..... According to TDAmeritrade they are pursuing him now" *(Plaintiff solely funded and managed the investments in the said IRA account for Defendant, additionally no complaints or legal*

17

*action has ever been pursued against Plaintiff, no proof of any such claim was submitted as NONE exists)*

"He waited until this motion was filed, and when he read what was in the motion, quite frankly, Your Honor, what he's now doing, he's doing exactly what the motion asks him not to do, he's doing." *(Defense counsel makes blatant false statements without any confirmation from Defendant or proof of the timing of any such alleged claims)*

"[Mr.SHAIKH's] threats to call the Division, take the kids away, things like that, talking about their daughter in very vulgar terms, to say the least" *(Defense counsel blatantly and without confirmation from Defendant, degrades Plaintiff by making purely false statements to show Plaintiff as an insensitive and abusive father)*

*"HE* told the daughter that he was taking the children to Dubai and that when the daughter told my client, then she confronted Mr.Shaikh -- this is prior to the filing of the motion -- that he screamed and yelled at the daughter that she should never tell the mother what he says to them, specifically whether he's taking them out of the country." *(No such event occurred and this conjecture led to the destruction of a loving relationship between a father and his children; Plaintiff has been irreparably harmed by such claims)*

"And we've supplied a lot of financial Information to the court -- " *(Plaintiff's December 19, 2014 motion challenged Defense counsel to produce such information claimed to have been submitted with the Defendant's motion, till this day no such Information has been received by the court or Plaintiff)*

"WE supplied to the court multiple, 90,000, $80,000 of checks that Mr.Shaikh gets for doing his investment work for various people. Clearly he has the funds, and more and more evidence is being turned up every day. *(Plaintiff's December 19, 2014 motion particularly demanded copies of such high dollar checks and none have ever been produced by Defense counsel; yet based on such conjecture a large award for counsel fees of $50,000 and other monetary fines were imposed on Plaintiff)*

"Judge, my only other observation is, one of the biggest concerns my client has had is that he will show up at the school or will do something where he just takes the children and there's no pending order that provides for any custody whatsoever." *(Again Defense counsel portrays Plaintiff as a threat to the welfare of his children, not informing the courts that 90% of the time it was Plaintiff who drove kids to and from their schools and his entire existence is for his 3 children, thru conjecture counsel caused irreparable harm and separation from kids that still survives to this day)*

53. It is important to note that the Trial Judge Madeline Einbinder at the time did not ask Plaintiff ex-wife to stand, be sworn, and confirm the truthfulness of her attorney's representations, demonstrating her abuse of the law and favoring her family friend ZABARSKY.

54. On or about May 2, 2014:   Plaintiff's then attorney Stephanie Brown was relieved of counsel by Judge Einbinder. The court event date was an opportunity for the Court to right the prejudicial wrongs committed on April 23, 2014.  But nothing of the sort happened.

55. Clearly had Plaintiff been aware of the court event date on April 23, 2014, Plaintiff would have discussed this with his then attorney Stephanie Brown

and she and Plaintiff would have appeared - or she would have requested an adjourned date. [T.57-58]

      In a respectful way Plaintiff said to Judge Einbinder:

" " Unfortunately for me in many regards, on April 23, 2014 again defense counsel took the opportunity in the absence of any representation from my side to inflame this Court with comments such as . . . I'm Pakistani national and that I may run off with my kids to a foreign country. Your Honor I'm a U.S. citizen. I've been here 26 years." [T.9]

" So I feel like I'm a little bit off kilter here, you know, trying to respond to some of these Orders that are being granted today." [T58]

Further, Judge EINBINDER never reassured Plaintiff that she was not prejudiced against members of the Islamic faith.

56. On or about June 13, 2014 Plaintiff prepared and sent to Judge Einbinder a pro se brief identifying due process issues. Pending issues were heard at oral argument on August 1, 2014.

57. On August 1, 2014 the Transcript reveals that the due process issues were **never addressed**, and that Defendant Zabarsky took control of the proceedings; without the Court allowing Plaintiff equal time to respond. 90% of the Transcript is Defendant Steven addressing the Court, and the Court's response.

58. Defendants Zabarsk and C.H.Z.' acts were intentional and proximately caused plaintiff to suffer emotional distress and financial loss. Plaintiff has endured

fear, humiliation, embarrassment, mental pain, suffering, inconvenience, and financial injury, including lost business profits.

59. Defendants Zabarsky and C.H.Z.' actions were intentional, malicious, willful, wanton, and callous, and showed reckless disregard for plaintiff rights and a clear violation of New Jersey Rules of Professional Conduct.

## LIABILITY OF DEFENDANT ZABARSKY

60. Defendant Zabarsky is a certified Attorney, dully registered to practice law in Ocean County, State of New Jersey.

61. The license to practice law in the State of New Jersey is a privilege, and it is the duty of every recipient of that privilege to conduct himself or herself at all times in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law.

62. Acts or omissions by an attorney which violate the Rules of Professional Conduct of the State of New Jersey shall constitute misconduct and be grounds for discipline.

63. Defendant Zabarsky has willfully and maliciously failed to conduct himself in conformity with said standards and is guilty of acts and omissions in violation of the authority.

64. Hon. Lawrence Jones ordered an Intensive Settlement Panel (ISP) for June 01,2015 upon realizing the unnecessary delays being caused by defendant

Zabarsky; in the interest of settling the matter amicably Plaintiff provided a practical ISP statement for consideration by Defendants Zabarsky & Germadnig; not withstanding the verbal agreement between spouses about Germadnig to leave all behind in return for the two surgeries received. An onerous and impractical ISP statement from Defendant Zabarsky as expected produced even more litigation and depletion of marital assets for the ZABARSKY / CHZ benefit, leaving Plaintiff impoverished and his marital home foreclosed in Sept' 2019.   Defendants prevented Plaintiff from even negotiating with the two ISP panel attorneys, the session ended within twenty minutes under the control of Defendant Zabarsky with no resolutions of any kind. See **EXHIBIT  12.** Zabarsky ISP offer with no mention of custody or proof of income/assets cited.

65. As a continued example of Zabarsky's ongoing obstruction of justice and advice to his client to NOT comply with court orders; on December 30, 2015 Defendant Laura Germadnig was scheduled to bring the oldest daughter Milana Shaikh then age 15 for reunification therapy pursuant to the consent order signed by all parties, dated December 18, 2015. Defendant Germadnig never complied with same as coached by Defendant Zabarsky. See **EXHIBIT 13**

66. Plaintiff then contacted Lakewood Police report # 15-094716 for assistance to have Defendant Germadnig comply with the court order but in turn Ptl. Vito Renna#341 on this date on a phone call was told *"...(she) was advised by her attorney not to do so"* thus Defendant Germadnig did not bring the child for court ordered therapy as memorialized in the attached Lakewood Police report. See **Exhibit 14** court order **and Exhibit 15** Police report.

67. This police report and false financial documents presented to the court on April 23, 2014 (Exhibit 1) has been the "Modus Operandi" throughout the entire divorce litigation process to harm Plaintiff and deplete all of his resources, causing tremendous emotional distress. These are just a tip of the iceberg of proofs to be presented at trial against Defendant Zabarsky's willful violations of the court orders, collusion and fraud upon court.

68. A lawyer is an expert in law pursuing a learned art in service to clients and in the spirit of public service and engaging in these pursuits as part of a common calling to promote justice and public good. Essential characteristics of the lawyer are knowledge of the law, skill in applying the applicable law to the factual context, thoroughness of preparation, practical and prudential wisdom, ethical conduct and integrity, and dedication to justice and the public good.

69. A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system, and a public citizen having special responsibility for the quality of justice.

70. A lawyer should be competent, prompt, and diligent. A lawyer should maintain communication with a client concerning the representation.

71. A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others.

72. Defendant Zabarsky has denied his oath and repeatedly committed fraud upon court in violation of all ethics and RPC rules he is obligated to uphold.

**FACTUAL ALLEGATION AGAINST DEFENDANT LAURA GERMADNIG**

73. Defendant Laura Germadnig is the Ex-wife and the mother of Plaintiff's minor children, Milana Shaikh, 20 years of age, born March 26, 2000, Sonya Shaikh, 17 years of age, born December 29, 2003, and Harrison Shaikh, 13 years of age, born November 7, 2007.

74. Defendant Laura Germadnig had literally begged for the divorce from the Plaintiff since she wanted to pursue a polygamous lifestyle; Plaintiff had no choice but to oblige and file for divorce. Germadnig had been an obese individual all her life and in 2012 had worked very hard to lose over 200 LBS

of body weight; due to this tremendous weight loss, she wore several pounds of loose skin like draperies on her body.

75. Defendant dictated that as a condition to leave full custody of the minor children and marital home without any additional split of marital assets in equitable distribution; Germadnig repeatedly verbally made an agreement and convinced Plaintiff of same to pay for her two extensive plastic surgeries called "Mommy make over". Plaintiff initially had tremendous emotional difficulty with the choices presented to him leading to the break up of his wonderful family so he refused for all the reason any loving father and husband would have, including but not exclusively due to lack of discretionary cash to pay for these life endangering extensive surgeries. Plaintiff, after a daily barrage of taunts and threats caved in and complied with the verbal contract and demand presented to him. At the onset of the divorce proceedings this verbal agreement of the spouses was put into the record with the Ocean county family court. See **EXHIBIT 16**

76. Defendant Germadnig began picking daily fights and acting grossly erratic to force Pla' to pay for the two surgeries about twelve months apart. Plaintiff was forced to call Jackson PD to the marital home to report several of such incidents. See **EXHIBIT 17**

77. Soon after the Defendant recovered from her second surgical procedure in January 2013, she put her plans into action by filing a false police report in collusion and support with her family friend Jackson Police officer Tristan Bennett, citing an alleged physical assault by Plaintiff on an imaginary incident alleged to have occurred on Jan 18, 2014.

At the TRO trial held on Jan 30,2014 before Ocean county superior court Judge Hon. Melanie Appleby, defendant testified that she was at her sister Nicole Germadnig Tarnowski's home starting the afternoon of Jan 17,2014 returning late in the evening AFTER the arrest and removal of Plaintiff by the corrupt co-conspirator Jackson PO Tristan Bennet on the fraudulent complaint by the Defendant dated earlier this day on Jan 18,2014. [see False police report violation of N.J.S.A. 2C:28-4 and Criminal coercion 2C:13-5 attached hereto and incorporated herein by reference]. See **EXHIBIT 18**

78. On April 23,2014 Defendant LAURA GERMADNIG permitted and colluded willfully with her lawyer to give false testimony against Plaintiff – leading to loss of plaintiff's life savings, custody of home and children with no access ever since.

79. Defendant LAURA GERMADNIG willfully violated 2 consent orders of parenting time that were negotiated via the court appointed mediator Steve Waters [see consent orders attached hereto and incorporated herein by reference] as well as the same provisions in the FJOD dated Dec 20,2016. Her willful refusal to prevent children's daily telephonic contact with Plaintiff despite being ordered by SEVERAL court orders constitutes intentional emotional distress, tortious interference pursuant NJ 2C:29-9(a) and willful contempt of court. See **EXHIBIT 19.**

80. Defendant LAURA GERMADNIG persistently sent harassing emails and texts to plaintiff. She stole Plaintiff's confidential client files containing private data in violation of NJ dept of securities and SEC rules on

confidentiality and fiduciary financial advisor responsibility. Texts and Police reports on stolen documents attached.  See **EXHIBIT 20**

81. Defendant LAURA GERMADNIG colluded with the ZABARSKY, CHZ and GUNTESKI defendants and used their influence on the various professional and government employee service providers **to commit fraud upon court.** These defendants illegally utilized government resources such as Howell and Jackson Police departments to prevent Pla' from filing claims against them, Ocean county Prosecutors office and Judges blatantly blocked all verified complaints and refused to prosecute same; since all these actors under color of law were or had recently represented Germadnig during the divorce litigation as evidenced by Lakewood Police on December 30,2015.

82. Defendant LAURA GERMADNIG is continually causing ongoing Emotional distress and harm against Plaintiff by blocking every single point of access to his children everyday that she is not jailed for her actions.

83. Defendant LAURA GERMADNIG either directly or caused to be placed a false YELP review via a friend harming plaintiff's professional reputation. See **EXHIBIT 21.**

84. Defendant LAURA GERMADNIG caused Plaintiff's Professional licenses to be revoked by the NJDOBI on June 16,2016 using ZABARSKY's influence; the insurance dept has yet to prove the basis of their suspension against the Plaintiff. See **EXHIBIT 22.**

27

85. Additionally, Defendant LAURA GERMADNIG Spread rumors with all of Plaintiff's former neighbors that he is "*hiding MILLIONS of dollars and not being fair with equitable distributions, until he acts honestly he will NEVER see his children*"; further boasting to many neighbors and family acquaintances that she "*would not rest in pursuing Pla' until she receives her desired amount of at least $17,000 per month*" in support payments, in addition to paying all household expenses.

86. Defendant LAURA GERMADNIG maliciously initiated / caused an IRS audit by making claims of hidden millions to the local IRS office in Freehold, NJ and then placed a notice on online platforms to announce to the world that Pla' is being audited and seeked random support by posting on an online platform known as YELP as in EXHIBIT 21.

    " **I STRONGLY advise you contact the Criminal Investigation Division of the IRS in Freehold, NJ or Newark, NJ. to protect yourself or report your contact with him. 732-761-3381 is IRS number.**"

87. Defendant LAURA GERMADNIG further used her friend Nancy Cavanaugh f/k/a KLEYMAN and Slava KLEYMAN who are believed to be known Russian Mafia associates (as confirmed by defendant Germadnig herself to Plaintiff during their marriage) through their trucking and logistics company IMS logistics based in Eatontown, NJ involved in drug and human trafficking. These individuals continually to this day harass Plaintiff with physical harm, potential kidnapping, cyber bullying on WhatsApp, Facebook, text messages and death threats. See **EXHIBIT 23**

88. Defendant LAURA GERMADNIG's concerted efforts to alienate Plaintiff from his children has poisoned the children's minds with rumors about Plaintiff "hiding his millions", preventing all contact with the Plaintiff while exposing them to her female escort business bringing her pimps to the house and / or to Nancy KLEYMAN's house to perform sexual activities in the

presence of not only Plaintiff's minor children but also Ms.KLEYMAN CAVANAUGH's; causing emotional and physical harm to the children.

89. Defendant Germadnig established her bad faith since the initial refusal to vacate the marital home and provide sole custody of children to Plaintiff upon utilizing the two "mommy make over" surgeries. The Defendant continually colluded with Jackson Police, defense counsel Zabarsky, her Russian mafia connections and her entire circle of influence to continue her fraud and tortious interference on Plaintiff till this day.

## FACTUAL ALLEGATIONS AGAINST DEFENDANT JOHN REED

90. Additional harassment from Defendant Zabarsky continued when Private investigator John Reed, illegally placed a tracker on Plaintiff's car CERTIFICATION FROM BUG SWEEP – See **Exhibit 24**

91. John Reed on or about July 6, 2015 followed Plaintiff into a bank in Wayne, NJ and eavesdropped on his interactions with the bankers; same was reported to Judge Marlene L. Ford but no action was taken due to Zabarsky's influence on this judge.

92. This is a complete violation of Plaintiff's privacy rights afforded to him by the New Jersey and United States constitution. Plaintiff is continually being threatened by such harassment. Plaintiff could not go anywhere having the peace of mind that he is not being followed or has a tracker placed on his car. As an extension of and under direct guidance from Zabarsky such actions are

common behavior. This constitutes stalking and harassment by defendant REED.

93. John Reed refused to provide discovery in a state action filed against him in Ocean county Dkt L-2918-16 under direction by Zabarsky; this impeded Plaintiff's efforts in getting justice for the harm done to him.

**FACTUAL ALLEGATION AGAINST DEFENDANT JOHN PEJOSKI**

94. Defendant JOHN PEJOSKI is a Jackson Police officer and additionally serves as a resource officer at Plaintiff's children's schools in Jackson twp, Defendant JOHN PEJOSKI is also a client of the Zabarsky and CHZ Defendants; once again influence is being used to discredit and harm this Plaintiff with total disregard for the law by his direct tortious interference in the parent child relationship by defaming Pla' to his children's teachers at Jackson Liberty HS, Crista McAuliffe school and Crawford Rodriguez school.

95. Acting under the malicious instructions of Defendants Laura Germadnig and Zabarsky / CHZ; PEJOSKI willfully and deliberately went to several of the school teachers and TOLD each of them in the three schools NOT to give Plaintiff any information about the children's well being and their academic progress. This is in direct opposition to the consent orders signed by Defendant Germadnig, allowing daily access to and to have complete information on the children at all times. See consent orders.

96. *Defendant JOHN PEJOSKI's* conducts or acts were willfully malicious, deliberate, or were done with reckless indifference to the likelihood that such

30

behavior would cause severe emotional distress and with utter disregard for the consequences of such actions.

97. As a result of Defendant JOHN PEJOSKI's conducts or acts, over the past 6 YEARS plaintiff has been completely deprived of access to his children in every imaginable format, as they grow up without a father who loves them.

98. Defendant Pejoski's actions has created an impression about the Plaintiff to be a "harmful parent" to his children and scared all the teachers from even getting on the phone or emailing complete progress reports since 2015.

99. Plaintiff's middle daughter Sonya Shaikh in grade 10 is currently failing miserably and is in danger from being removed from school. Due to defendant Pejoski's rumors about this Plaintiff the teachers will not communicate to provide resources to his daughter to prevent her from failing in school. See **EXHIBIT 25** failing email from teacher

## FACTUAL ALLEGATIONS AGAINST DEFENDANTS SIEGFRIED AND PATRICIA GERMADNIG

100.    Defendants Siegfried Germadnig ("Defendant Siegfried") and Patricia Germadnig ("Defendant Patricia") are the parents to Defendant Laura Germadnig.

101.    Defendants Siegfried and Patricia Germadnig's committed outrageous acts against Plaintiff constituting continuous torts from 2014 to present.

102.    Since Plaintiff's false arrest and false imprisonment due to the false domestic violence allegation made on January 18, 2014, Plaintiff ex-wife and her parents, Defendants Siegfried and Patricia Germadnig have the children involved in school night and weekend partying at the former marital residence at 5 Lons Lane, Jackson, New Jersey and at their personal residence at 172 Roosevelt Ave Howell, NJ 07731. There is open alcohol access to the children, illegal drug use i.e. marijuana and cocaine, and certain sexual behavior too inappropriate to list here being observed by the minor children.

103.    The drug abuse is so rampant that in April 04, 2018 defendants' own son Justin N. Germadnig age 29 died by overdosing on crack cocaine; what's really horrific is the decedents own five year old minor daughter Sarah Germadnig found her father dead in the bath tub with a needle still in his arm. **This court has an obligation to remove custody of Sarah Germadnig to DCP&P of the minor child until a safe environment can be established for the best interest of the child**. See **EXHIBIT 26.**

104.    Several of the Germadnig defendants family members adults and children have perished due to drug over dose. Plaintiff's children are in grave danger due to such exposure to such illicit activities.

105.    Whenever the Germadnig defendants have watched over the children, Plaintiff has been threatened by the use of Police who are under the guidance of Defendant Zabarsky as the local prosecutor to disallow children from calling their Plaintiff father or communicate with other digital means.

106.    Out of exceptional frustration, Plaintiff contacted Defendant Patricia Germadnig's Brother Eddie Germadnig, their daughter Nicole Germadnig Tarnowski and other close relatives to potentially assist with the visitation of the children; each of these "would be mediators" were told by Defendants Siegfried and Patricia that they"***better stay out of trying to help and not interfere***" in assisting Plaintiff. This has led to severe parental alienation which will affect their relationship forever.

107.    Defendants Siegfried and Patricia have conspired with Defendants Laura Germadnig, the Zabarsky defendants Lawfirm to destroy the relationship between Plaintiff Father and his children. Defendants Siegfried and Patricia have denigrated Plaintiff in front of the children to further the damage which will require years of therapy to mend the relationship.

108.    Till this day the Germadnig parents fully finance this litigation against Plaintiff and refuse to respond to settlement offers to have custody of the children while colluding to BLOCK all access to the helpless children who miss their father.

## FACTUAL ALLEGATIONS AGAINST DEFENDANTS, COWAN GUNTESKI & CO, JOSEPH GUNTESKI CPA AND WILLIAM A. STABILE CPA

109.    Defendant Cowan Gunteski & Co is a forensic accounting firm that offers professional accounting and auditing service in the state of New Jersey.

110.    Defendants, Joseph Gunteski and William A. Stabile both are CPA's by profession and are employees of Defendant Cowan Gunteski & Co.

111.    Defendant Zabarsky and Defendant Laura Germadnig hired the Gunteski defendants to willfully inflate and hype up the financial status of Plaintiff, with the sole aim of taking away his assets.

112.    On or about June 09, 2015, Gunteski Defendants, produced a fabricated report of Plaintiff's assets. (See **Exhibit 27**, and incorporated herein by reference)

113.    Realizing the operational motive of the Zabarsky defendants HOW they fleece their unsuspecting clients and ravage their life savings; the Gunsteski defendants were ordered to produce an unsubstantiated report only hinting to the alleged "discovery" of the $650,000 but not the present or future location of these mysterious assets despite sending over 150 subpoenas to various financial institutions domestically and around the world; as can be seen in the June 09, 2015 report on page 2 pp 3 that,"*the Shaikh's have over $650,000 in assets*"; further claiming on pp 4 "*Plaintiff alone has withdrawn and/or closed bank account in the amount of $419,222*".

114.    The Gunteski defendants report was used by the Ocean county family court to make its determination in awarding $650,000 of assets to Defendant Laura Germadnig, the former spouse. (**See FJOD as Exhibit 28** incorporated herein by reference).

115.    Thomas J. Whale CPA who has done Plaintiff's tax returns for over fifteen (15) years explicitly pointed out the errors in the Gunteski report but they refused to correct it, causing continual harm to Plaintiff. (See Thomas J. Whale CPA accurate report attached hereto, marked as **Exhibit 29** and incorporated herein by reference)

116.    Repeated refusal to correct their report despite requests by Plaintiff to the Zabarsky and Gunteski defendants clearly illustrates that they were caught "with their hands in the cookie jar" in orchestrated attempt to defraud the

Plaintiff and his family. This had a devastating affect on the divorce equity settlement and more obvious is that they cannot even slightly prove that such monies actually existed.

117.    As a direct result of the aforesaid unlawful conducts and acts of Gunteski Defendants, Plaintiff has suffered severe emotional distress due to loss of his family, loss of children's custody, embarrassment, repeatedly jailed, loss of life financial savings and including loss of business profits.

118.    Defendants Cowan Gunteski & Co, Joseph Gunteski CPA and William Stabile CPA actions were intentional, malicious, willful, wanton, callous and showed a reckless disregard to their ethical duties as CPA's while harming Plaintiff.

119.    Plaintiff filed a complaint with the AICPA board on Nov 05, 2018 about the frivolous allegations on the $650,000 in the Gunteski defendants report, the board refused to adjudicate the complaint since the June 09,2015 complaint is clearly a "Preliminary" report without any final and factual findings; despite this conclusion, Gunteski defendants refuse to correct their preliminary report to the detriment of Plaintiff who is still liable for the alleged $650,000 per the FJOD. See **EXHIBIT 30** AICPA close out notice **and EXHIBIT 31 Nov' 25,2019** Plaintiff letter for Gunteski to correct error

## FACTUAL ALLEGATIONS AGAINST DEFENDANT SLAVA AND NANCY CAVANAUGH KLEYMAN

120.    Defendants Slava and Nancy have been harassing Plaintiff via text messages and phone calls since the very first week when Plaintiff filed for divorce in September 2013.

121.    Defendant Nancy has repeatedly convinced Laura NOT to allow Plaintiff to see his children since Defendant Laura is being used by Nancy for

her "escort/prostitution" business to wealthy old men. One such customer is Robert Unanue, the current CEO of Goya Foods Inc and several high profile men including politicians are customers of these defendants.

122.    Mr. Unanue had sex with Laura at 1187 Marisa Dr home while Nancy's two minor daughters and Plaintiff's three minor children slept downstairs and were witnesses to the prostitution on or about June 2015 and is a regular customer of Defendant Laura Germadnig.

123.    Plaintiff had repeatedly told Nancy NOT to contact him but she still persists, she continues to call and texts from her number and via spoof calls. See **EXHIBIT 32.**

124.    Several Howell and Jackson Police reports exist that document her harassing phone calls. Most of her messages called Plaintiff a "dead beat father", "your children don't love you"; "these children are too smart that's why they don't talk to you"; every message was designed to make Plaintiff stop loving his kids. See **EXHIBIT 33**

125.    After being harassed for several years Plaintiff finally visited Slava Kleyman at his office IMX Logistics company in Eatontown NJ on Aug 08, 2017 and upon Plaintiff asking him nicely to stop his ex wife from harassing him and or interfering in Plaintiff's Parent child relationship he informed Plaintiff that "*I can have you killed you know.. and no one will even find out about it*"; it has been confirmed by many sources that he is part of the Russian MOB/mafia and is a very "dangerous man".

126.    There is reason to believe that his trucking company is being used to transport drugs across the country as well as internationally with prostitution and "sex slave" services. For several years both of them have used Laura Germadnig in their prostitution ring and used her as a "mule" to transport

drugs and money; endangering Plaintiff children's safety and emotional well being.

127.     The primary reason for the breakdown of Plaintiff's parent child relationship has been their complete financial and influential support since the beginning of Plaintiff's divorce. Defendant Kleyman and Laura Germadnig are financially co-dependent.

## COUNT I
## FRAUD UPON THE COURT – AS AGAINST ALL DEFENDANTS

128.     Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

129.     Defendants willfully engaged in conduct that is prejudicial to the administration of justice; knowingly and intentionally engaged in dilatory behavior in an effort to derail any due process for Plaintiff, encumbering his access to the courts, defrauding Plaintiff from his income to cause Plaintiff loss of his legal representation by repeatedly not responding to his three divorce attorneys to settle the matter. Defendants' actions have caused Plaintiff great financial and emotional distress and adversely affected Plaintiff's ability to earn a living.

130.     The surreptitious documents tendered to the Circuit Court Judge Madeline F. Einbinder of Ocean County by Defendant Zabarsky constitute fraud and abuse of process.

131.    The intentional and knowing fraud and misconduct by Defendants caused Plaintiff's businesses to fail, in that the monies defrauded from Plaintiff left him unable to pay for marketing for new clients, servicing existing clients or to even have the space in the basement of his former marital home at 5 Lons Lane Jackson, NJ 08527 to operate his business from.

132.    This has caused PTSD and depression leading to great emotional distress caused by Defendant's fraud and misconduct against Plaintiff, so incapacitated Plaintiff that he was left unfit and incapable of performing the duties and responsibilities necessary to Plaintiff's business ventures.

133.    On or about April 23, 2014, Defendant Zabarsky knowingly and intentionally made false statements to the trial court with the intent to defraud Plaintiff of monies and to deny Plaintiff's right to be heard by the trial court.

134.    All Defendants made material representations of presently existing or past facts to the Court, with knowledge or belief that those representations were false; with an intention that the Court rely upon those false misrepresentations, which the Court then therefore reasonably relied upon; which reliance resulted in significant and severe damages to Plaintiff.

## RESPONDEAT SUPERIOR (LIABILITY OF DEFENDANT C.H.Z FOR THE ACTS AND OMMISSIONS OF ITS EMPLOYEES

135.    Plaintiff hereby re-alleges and incorporates by reference the allegations

as set forth in the preceding paragraphs of this complaint.

136.    Defendant C.H.Z is responsible for the conduct of its managers, principals, officers, agents, and employees under the doctrine of respondeat superior.

137.    Upon information and believe Defendant Zabarsky is an employee of defendant C.H.Z.

138.    The acts or conduct of Defendant Zabarsky as alleged above took place during the hours he was in fact working for Defendant C.HZ.

139.    These acts were related to or committed in the context of the conduct of Defendant Zabarsky which he was hired to perform.

140.    The wrongful actions herein complained of were performed by Defendant Zabarsky as an employee of Defendant C.H.Z, in the course of Defendant C.H.Z.'s business. Defendant C.H.Z. is thus liable for the actions of Defendant Zabarsky under the doctrine of respondeat superior.

141.    As a result of these actions, Plaintiff has been damaged in an amount to be determined at trial.

142.    Plaintiff is entitled to recover from all Defendants damages, plus punitive damages, in an amount to be determined by the finder of fact, as well as attorney fees.

## COUNT II

## INVASION OF PRIVACY – ALL DEFENDANTS

143.    Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

144.    In carrying out the scheme to track the Plaintiff's car as described herein without the consent of the Plaintiff, all Defendants, acting through and with Defendant John Reed, intentionally intruded upon the Plaintiff's solitude or seclusion in that Defendant John Reed took information from the privacy of the Plaintiff's Car.

145.    The Plaintiff, did not and by law could not, consent to Defendant John Reed's intrusion.

146.    Defendant John Reed's intentional intrusion on the Plaintiff's solitude or seclusion is highly offensive to a reasonable person in that Defendant John Reed's conduct violated federal and state civil and criminal statutes designed to protect individual privacy. Specifically, the Defendant John Reed's conduct violated;

    a. The Computer Fraud and Abuse Act and corresponding computer crime laws in all 50 states because Defendant John Reed knowingly placing or facilitated the placement of third-party tracker on the car of Plaintiff who was not aware of and could not consent to the placement, thereby

intentionally exceeding authorized access to the Plaintiff's computers system in the car and obtaining information from Plaintiff' car or computer. Intentional access to Plaintiff's computers system in the car which exceeds authorization and results in the obtaining of information from a computer used in interstate commerce violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), and corresponding computer crime statutes of all 50 states

147.    Defendant John Reed's actions in committing criminal acts which violated the privacy rights of plaintiff is highly offensive to a reasonable person.

148.     Defendant John Reed's unauthorized tracking of the Plaintiff's car including, as detailed above, communications on sensitive topics, such as divorce and health, security, is highly offensive to a reasonable person. Defendant John Reed's intentional intrusion on the Plaintiff's solitude and seclusion violated plaintiff's privacy right, which prohibit the use of those services in criminal activity, unlawful activity, and the tracking of car without consent.

149.    Defendant John Reed's actions were highly offensive to a reasonable person because Defendant John Reed's targeting of Plaintiff was intrusive in

that the defendant John Reed placed significantly tracking technologies on Plaintiff's car to take advantage of the Plaintiff's vulnerability.

150.    As a result of the above, Defendant John Reed is liable to the Plaintiff for general damages to the Plaintiff's interest in privacy resulting from the invasions, compensatory and punitive damages.

## COUNT III

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – ALL DEFENDANTS

151.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

152.    The conduct of Defendants as set forth above were so extreme and outrageous that it exceeded the boundaries of human decency and was beyond pale of conduct tolerated in a civilized society. These conducts were intended to cause severe emotional distress, or were done in reckless disregard of the probability of causing severe emotional distress.

153.    As an actual and proximate result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer severe and continuous humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in an amount according to proof at the time of trial.

154.    Defendants committed the acts alleged herein maliciously, fraudulently,

and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Because the acts taken toward Plaintiff were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof.

**COUNT IV**
**INTENTIONAL INTERFERENCE WITH PROSPECTIVE**
**ECONOMIC ADVANTAGE**
**(AGAINST ALL DEFENDANTS)**

155.    Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

156.    Plaintiff had a reasonable probability of future business opportunities and economic benefit in connection with its relationships with its customers.

157.    Defendants had knowledge of such opportunities and intentionally interfered with such opportunities in violation of Plaintiff's right.

158.    Defendants committed these tortious acts with deliberate and actual malice, ill-will, and oppression in conscious disregard of Plaintiff's legal rights.

159.    Defendants' actions have disrupted Plaintiff's relationships and business opportunities with its customers.

160.    The aforementioned acts of Defendants constitute a tortious interference with prospective economic advantage and relations.

161.    Plaintiff has suffered and will continue to suffer damages due to Defendants' tortious interference with his prospective economic advantage.

162.    Plaintiff had protectable interests; Defendants, with malice, and without justification, intentionally interfered with Plaintiff's protectable intershoots; with the reasonable likelihood that the interference would cause the loss of Plaintiff's prospective economic advantage; and Defendants did in fact cause the loss of significant prospective economic advantage.

163.    As the direct result of Defendants' actions as alleged herein, Plaintiff has been irreparably, materially, and substantially harmed and damaged in an amount to be proven at trial.

## COUNT V

### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (AGAINST ALL DEFENDANTS)

164.    Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

165.     Plaintiff had a reasonable probability of future business opportunities and economic benefit in connection with its relationship with its customers.

166.     Defendants had knowledge of such opportunities and knew or should have known that if they did not act with due care, their actions would interfere with such opportunities and cause Plaintiff to lose the economic benefit of such relationships.

167.     Defendants' actions have disrupted Plaintiff's relationships and business opportunities with its customers.

168.     The aforementioned acts of Defendants constitute a tortious interference with prospective economic advantage and relations.

169.     Plaintiff has suffered and will continue to suffer damages due to Defendants' tortious interference with its prospective economic advantage.

170.     As the direct result of Defendants' actions as alleged herein, Plaintiff has been irreparably, materially, and substantially harmed and damaged in an amount to be proven at trial.

## RESPONDEAT SUPERIOR

## (AGAINST DEFENDANTS, COWAN GUNTESKI & CO)

171.     Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

172.    Defendants, Cowan Gunteski & Co is responsible for the conduct of its managers, principals, officers, agents, and employees under the doctrine of respondeat superior.

173.    Upon information and belief Defendants, Joseph and William were employees of Defendant Cowan Gunteski & Co.

174.    The acts or conduct of Defendants, Joseph and Williams alleged above took place during the hours they were in fact working for Defendant, Cowan Gunteski & Co.

175.    These acts were related to or committed in the context of the conduct of Defendants, Joseph and William which they were hired to perform.

176.    The wrongful actions herein complained of were performed by Defendants Joseph and William while they were employees of Defendant, Cowan Gunteski & Co, in the course of normal business. Defendant Cowan Gunteski & Co. is thus liable for the actions of Defendants, Joseph and William under the doctrine of respondeat superior.

177.    As a result of these actions, Plaintiff has been damaged in an amount to be determined at trial.

178.    Plaintiff is entitled to recover from Defendants damages, plus punitive damages, in an amount to be determined by the finder of fact, as well as attorney fees

## COUNT VI
## NEGLIGENT MISREPRESENTATION
## (AGAINST DEFENDANTS, COWAN GUNTESKI & CO, JOSEPH AND WILLIAM)

179.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

180.    Defendants, Cowan Gunteski & Co, Joseph and William negligently misrepresented the true facts regarding the financial and property assets report of the plaintiff that was presented to the court, which misrepresentations of facts the court relied upon.

181.    Defendants, Cowan Gunteski & Co, Joseph and William knew or should have known that the financial and property assets report was incorrect, erroneous and or preliminary in nature.

182.    Defendants, Cowan Gunteski & Co, Joseph and William negligently misrepresented the true facts of the financial and property assets report with the intent to defraud and cause economic loss to the Plaintiff.

183.    In addition, Defendants, Cowan Gunteski & Co, Joseph and William through these misrepresentations of the true facts of the financial and property assets report led the court to award damages against the plaintiff in excess of plaintiff's properties.

184.    As a direct and proximate result of Defendants, Cowan Gunteski & Co, Joseph and William's misrepresentation of material facts of the financial and property assets report that was present to the court for the determination of Plaintiff's assets, Plaintiff has suffered damages in an amount to be determined according to proof at trial.

185.    Plaintiff is also entitled to punitive damages as a result of Defendants, Cowan Gunteski & Co, Joseph and William's misrepresentation negligent misrepresentations.


### COUNT VII

### DECLARATORY RELIEF
### (AGAINST ALL DEFENDANTS)

186.    Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

187.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

188.    As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiff.

189.    Plaintiff therefore seeks an order declaring Defendants' practice unlawful, and that Defendants are liable to Plaintiff for damages caused by that practice.

## CIVIL CONSPIRACY
## AGAINST ALL DEFENDANTS

190.  Plaintiff hereby re-alleges and incorporates by reference the allegations as set forth in the preceding paragraphs of this complaint.

191.  All Defendants entered into an agreement for the purpose of committing unlawful acts against the Plaintiff; the conspirators took at least one overt act in furtherance of the agreement; Plaintiff has suffered severe damages as a result.

192.  Defendant Cowan Gunteski & Co is a forensic accounting firm that offers professional accounting and auditing service in the state of New Jersey.

193.  Defendants, Joseph Gunteski and William A. Stabile both are CPA's by profession and are employees of Defendant Cowan Gunteski & Co.

194.  Defendant Zabarsky and Defendant Laura Germadnig hired the Gunteski defendants to willfully inflate and hype up the financial status of Plaintiff, with the sole aim of taking away all his assets.

195.  On or about June 09, 2015, Gunteski Defendants, produced a fabricated report of Plaintiff's assets.

196.  Realizing the operational motive of the Zabarsky defendants HOW they fleece their unsuspecting clients and ravage their life savings; the Gunteski defendants were ordered to produce an unsubstantiated report only hinting to the alleged "discovery" of the $650,000 but not the present or future location of these mysterious assets despite sending over 150 subpoenas to various financial institutions domestically and around the world; as can be seen in the June 09, 2015 report on page 2 pp 3 that, *"the Shaikh's have over $650,000 in assets"*; further claiming on pp 4 *"Plaintiff alone has withdrawn and/or closed bank account in the amount of $419,222"*.

197.    The Gunteski defendants report was used by the Ocean county family court to make its determination in awarding $650,000 of assets to Defendant Laura Germadnig, the former spouse.

198.    Thomas J. Whale CPA who has done Plaintiff's tax returns for over fifteen (15) years explicitly pointed out the errors in the Gunteski report but they refused to correct it, causing continual harm to Plaintiff.

199.    Repeated refusal to correct their report despite requests by Plaintiff to the Zabarsky and Gunteski defendants clearly illustrates that they were caught "with their hands in the cookie jar" in orchestrated attempt to defraud the Plaintiff and his family. This had a devastating effect on the divorce equity settlement and more obvious is that they cannot even slightly prove that such monies actually existed.

200.    As a direct result of the aforesaid unlawful conducts and acts of Gunteski Defendants, Plaintiff has suffered severe emotional distress due to loss of his family, loss of children's custody, embarrassment, repeatedly jailed, loss of life financial savings and including loss of business profits.

## COUNT VIII
## FRAUD AND FRAUDULENT MISREPRESENTATION
## (AGAINST DEFENDANTS, COWAN GUNTESKI & CO, JOSEPH AND WILLIAM)

201.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

202.    Defendants, Cowan Gunteski & Co, Joseph and William fraudulently misrepresented the true facts regarding the financial and property assets report of the plaintiff that was presented to the court.

203.    Defendants, Cowan Gunteski & Co, Joseph and William knew or should have known that the financial and property assets report was incorrect, erroneous and without evidence.

204.    Defendants, Cowan Gunteski & Co, Joseph and William fraudulently misrepresented the true facts of the financial and property assets report with the intent to defraud and cause economic loss to the Plaintiff.

205.    In addition, Defendants, Cowan Gunteski & Co, Joseph and William through these fraudulently misrepresentations of the true facts of the financial and property assets report led the court to award damages against the plaintiff in excess of plaintiff's properties, because the court relied upon the misrepresentations.

206.    As a direct and proximate result of Defendants, Cowan Gunteski & Co, Joseph and William's misrepresentation of material facts of the financial and property assets report that was present to the court for the determination of Plaintiff's assets, Plaintiff has suffered damages in an amount to be determined according to proof at trial.

207.    Plaintiff is also entitled to punitive damages as a result of Defendants, Cowan Gunteski & Co, Joseph and William's fraudulently misrepresentation.

## COUNT IX
## CIVIL HARASSMENT
## AGAINST DEFENDANTS SLAVA AND NANCY

208.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

209.    Defendants Slava and Nancy have been harassing Plaintiff via text messages and phone calls since the very first week when Plaintiff filed for divorce.

210.    Nancy has repeatedly told Laura NOT to allow Plaintiff to see his children while utilizing Defendant Laura as a "mule" for prostitution, drugs and money laundering services.

211.    Plaintiff had repeatedly told Nancy NOT to contact him but she still persists, she continues to call and texts from her number and via spoof calls.

212.    Several Howell and Jackson Police reports exist that document her harassing phone calls. Most of her messages called Plaintiff a "dead beat father", "your children don't love you"; "these children are too smart that's why they don't talk to you"; every message was designed to make Plaintiff stop loving his kids.

213.    Defendants Slava and Defendant Nancy have committed the predicate act of harassment and the plaintiff therefore is entitled to protection.

214.    Defendants Slava and Nancy made, or caused to be made, communications which contained offensive language, in a manner which was likely to cause annoyance or alarm.

## COUNT X
## BREACH OF CONTRACT
## AGAINST DEFENDANT LAURA GERMADNIG

215.    Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

216.    The verbal agreement between Plaintiff and Defendant LAURA GERMADNIG constitutes a valid and binding contract, which Defendant Laura unilaterally breached. Both parties agreed that Plaintiff will pay for Defendant LAURA GERMADNIG two plastic surgeries, and then Defendant LAURA GERMADNIG would forfeit her divorce settlement and claims. Defendant LAURA GERMADNIG would further leave the home and give Plaintiff full custody of the children.

217.    Plaintiff has performed all of his obligations pursuant to the terms of the contract.

218.    All conditions required for Defendants performance have occurred.

219.    Defendant LAURA GERMADNIG has breached her obligations to Plaintiff under the contract by, among other things, failing to perform he required duties, such as failing to forfeit her divorce settlement and claims. Defendant LAURA GERMADNIG also failed leave the home and give Plaintiff full custody of the children as agreed under the terms of the contract.

220.    Although plaintiff has demanded that Defendant LAURA
GERMADNIG perform all obligations under the contract, Defendant LAURA
GERMADNIG failed, and refused, and continues to fail and refuse to take any
steps necessary to fully and completely her obligations and duties in the
contract.

221.    Plaintiff has been damaged in the amount to be proven at trial as a
result of Defendant LAURA GERMADNIG's breach of the contract.

222.    Plaintiff's damaged is ongoing and increasing as a result of the
Defendant LAURA GERMADNIG's breach of the contract.

## COUNT XI
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
## AGAINST DEFENDANT LAURA GERMADNIG

223.    Plaintiff incorporates by reference every prior and subsequent
allegation of this Complaint as if fully restated here.

224.    At all times relevant to this litigation, Defendant LAURA
GERMADNIG was in a contractual relationship with Plaintiff and owed a
duty to Plaintiff to act in good faith and deal fairly with Plaintiff.

225.    Defendant LAURA GERMADNIG has breached her obligations to
Plaintiff under the contract by, among other things, failing to perform he
required duties, such as failing to forfeit her divorce settlement and claims.

Defendant LAURA GERMADNIG also failed leave the home and give Plaintiff full custody of the children as agreed under the terms of the contract.

226. Such acts and omissions leading to the Defendant LAURA GERMADNIG's breach of duty to deal in good faith and fairly with plaintiff's was the actual and proximate cause of harm to plaintiff.

227. Defendant LAURA GERMADNIG's conducts were outrageous, with acts being done with malice or bad motives or reckless indifference to the interests of Plaintiff.

## **DEMAND FOR RELIEF**

Plaintiff, request judgment against all Defendants, jointly and severable, as follows:

A.        Declaring Defendants' actions to be unlawful; permanently enjoining Defendants' performing further unfair and unlawful acts as alleged herein;

B.        For all recoverable compensatory, statutory, and other damages sustained by Plaintiff, including disgorgement and all other relief allowed under applicable law

C.        For costs;

D.        For both pre-judgment and post-judgment interest on an amount to be decided at trial;

E.        For appropriate injunctive relief, including public injunctive relief,

F.        For treble damages in so far as they are allowed by applicable laws;

G.      For appropriate individual relief as requested above;

H.      For payment of attorneys' fees and expert fees as may be allowable under applicable law;

I.      For such other and further relief, compensatory and punitive damages, as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves its right to further amend this Complaint, upon completion of its investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

Respectively Submitted by;

**ZIA SHAIKH / *Plaintiff, Pro Se***
**4400 Route 9, Suite 1000**
**Freehold, NJ 07728**
**732-766-5466**

**Dated; August 19, 2020.**